Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDI BEKINS,<br>Plaintiff,<br>v.<br>ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP,<br>Defendant. | Case No.: '16CV2732 MMAMDD<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff Cindi Bekins ("Plaintiff"), by and through her attorneys of record, brings this action against Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP (collectively "AstraZeneca" or "Defendants"). Plaintiff alleges on information and belief, except for information based on personal knowledge, as follows:

**<u>JURISDICTION AND VENUE</u>**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interests and costs, and because Defendants are both incorporated and have their principal places of business in states other than the state in which the named Plaintiff resides.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Southern District of California.

**DEFENDANT PARTIES**

3. Defendant AstraZeneca Pharmaceuticals LP is a Delaware corporation, which has its principal place of business at 1800 Concord Pike, Wilmington, DE 19897.

4. Defendant AstraZeneca LP is a Delaware corporation, which has its principal place of business at 1800 Concord Pike, Wilmington, DE 19897.

5. In doing the acts alleged herein, said Defendants were acting in the course and scope of such agency, representation, joint venture, conspiracy, consultancy, predecessor agreement, successor agreement, service and employment, with knowledge, acquiescence, and ratification of each other.

6. On information and belief, Defendants have transacted and conducted business in the State of California, and/or contracted to supply goods and services within the State of California, and these causes of action have arisen from the same.

7. On information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America and the State of California.

8. On information and belief, at all relevant times, Defendants derived and derive substantial revenue from goods and products used in the State of California and from interstate commerce.

9. On information and belief, at all relevant times, Defendants committed tortious acts within the State of California causing injury within the State of California, out of which act(s) these causes of action arise.

**PLAINTIFF**

10. Plaintiff is a resident of the State California.

11. Before purchasing Proton Pump Inhibitors ("PPIs"), Plaintiff and Plaintiff's doctor were exposed to the advertising and marketing of Defendants. Plaintiff relied on

the representations and warranties from Defendants made therein in making her decision to purchase Nexium and/or other Nexium branded products and PPIs believing it would be safe and effective for its advertised use and relying on the expertise of Defendants.

12. Plaintiff ingested Nexium and/or other Nexium branded products and PPIs from approximately 2003—2016.

13. At no time did Plaintiff take more than the recommended dosing regimen contained in the packaging and labeling of Nexium and/or other Nexium branded products and PPIs.

14. After taking the recommended dosing of and as a result of Nexium and/or other Nexium branded products and PPIs manufactured by Defendants, Plaintiff suffered Acute Kidney Failure in approximately 2011.

## SUMMARY OF THE CASE

15. As a result of the defective nature of PPIs, persons who ingested this product, including Plaintiff, have suffered and may continue to suffer from kidney injuries including acute interstitial nephritis ("AIN"), acute kidney injuries ("AKI"), chronic kidney disease ("CKD") and renal failure, also known as end-stage renal disease ("ESRD").

16. Defendants concealed and continue to conceal their knowledge of PPIs' unreasonably dangerous risks from Plaintiff, her physicians, other consumers, and the medical community. Specifically, Defendants failed to adequately inform consumers and the prescribing medical community about the magnified risk of kidney injuries related to the use of PPIs.

17. As a result of Defendants' actions and inactions, Plaintiff was injured due to her ingestion of PPIs, which caused and will continue to cause Plaintiff's injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

**FACTUAL ALLEGATIONS**

18. Over 60 million Americans experience heartburn, a major symptom of GERD, at least once a month and some studies have suggested more than 15 million Americans experience heartburn on a daily basis.

19. About 21 million Americans used one or more prescription PPIs in 2009 accounting for nearly 20% of the drugs' global sales and earning an estimated $11 billion annually.

20. Upon information and belief, from 2003 to the present, PPIs have been one of the top ten best-selling and most dispensed forms of prescription medication in the United States each year.

21. PPIs are one of the most commercially successful groups of medication in the United States. Upon information and belief, between the period of 2008 and 2013, prescription PPIs had a sale of over $50 billion with approximately 240 million units dispensed.

22. Defendants, directly or through their agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed, promoted, and sold PPIs.

23. In October of 1992, three years after the FDA's initial PPI approval, researchers from the University of Arizona Health Sciences Center led by Stephen Ruffenach published the first article associating PPI usage with kidney injuries in *The American Journal of Medicine*, followed by years of reports from national adverse drug registries describing this association.

24. In 2006, researchers at the Yale School of Medicine conducted a case series published in the International Society of Nephrology's *Kidney International* finding that PPI use, by way of AIN, left most patients "with some level of chronic kidney disease."

25. On August 23, 2011, Public Citizen, a consumer advocacy group, filed a petition with the FDA to add black box warnings and other safety information concerning several risks associated with PPIs including AIN.

26. According to the petition, at the time of its filing there was “no detailed risk information on any PPI for this adverse effect.”

27. On October 31, 2014, more than three years after Public Citizen’s petition, the FDA responded by requiring consistent labeling regarding risk of AIN on all prescription PPIs.

28. The FDA noted “that the prescription PPI labeling should be consistent with regard to this risk” and that “there is reasonable evidence of a causal association.”

29. In December of 2014, the labels of prescription PPIs were updated to read:

> *Acute interstitial nephritis has been observed in patients taking PPIs including [Brand]. Acute interstitial nephritis may occur at any point during PPI therapy and is generally attributed to an idiopathic hypersensitivity reaction. Discontinue [Brand] if acute interstitial nephritis develops.*

30. The FDA did not require the consistent labeling regarding risk of AIN on over-the-counter PPIs.

31. In January of 2016, a study published in the *Journal of the American Medical Association* found that PPI use was independently associated with a 20—50% higher risk of CKD.

32. A recent study conducted by Dennis Moledina and Mark Perazella published by the *Journal of Nephrology* found that exposure to PPIs is associated with increased risk of development of CKD, progression of kidney disease, and risk of ESRD. The study was published online in February 2016 and as print in October 2016.

33. To date, over-the-counter PPIs lack detailed risk information for AIN.

34. To date, prescription and over-the-counter PPIs lack detailed risk information for CKD.

35. Parietal cells in the stomach lining secrete gastric juices containing hydrochloric acid to catalyze the digestion of proteins.

36. Excess acid secretion results in the formation of most ulcers in the gastroesophageal system and symptoms of heartburn and acid reflux.

37. PPIs irreversibly block the acidic hydrogen/potassium ATPase enzyme system (H+/K+ ATPase) of the gastric parietal cells, thereby halting the production of most hydrochloric acid.

38. In spite of their commercial success and global popularity, up to 70% of PPIs may be used inappropriately for indications or durations that were never tested or approved.

39. As a result of the defective nature of PPIs, even if used as directed by a physician or healthcare professional, persons who ingested PPIs have been exposed to significant risks stemming from unindicated and/or long-term usage.

40. From these findings, PPIs and/or their metabolites—substances formed via metabolism—have been found to deposit within the spaces between the tubules of the kidney and act in such a way to mediate acute interstitial nephritis ("AIN"), a sudden kidney inflammation that can result in mild to severe problems.

41. PPI-induced AIN is difficult to diagnose with less than half of patients reporting a fever and, instead, most commonly complaining of non-specific symptoms such as fatigue, nausea, and weakness.

42. In April 2016, a study published in the *Journal of Nephrology* suggested that the development of and failure to treat AIN could lead to chronic kidney disease and end-stage renal disease, which requires dialysis or kidney transplant to manage.

43. CKD describes a slow and progressive decline in kidney function that may result in ESRD. As the kidneys lose their ability to function properly, wastes can build to high levels in the blood resulting in numerous, serious complications ranging from nerve damage and heart disease to kidney failure and death.

44. Prompt diagnosis and rapid withdrawal of the offending agent are key in order to preserve kidney function. While AIN can be treated completely, once it has progressed to CKD it is incurable and can only be managed, which, combined with the lack of numerous early-onset symptoms, highlights the need for screening of at-risk individuals.

45. Consumers, including the Plaintiff, who have used PPIs for the treatment of increased gastric acid have and had several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits associated with PPI therapy.

46. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with PPI use.

47. Defendants concealed and continue to conceal their knowledge that PPIs can cause kidney injuries from Plaintiff, other consumers, and the medical community. Specifically, Defendants have failed to adequately inform consumers and the prescribing medical community against the serious risks associated with PPIs and have completely failed to warn against the risk of CKD and ESRD.

48. As a result of Defendants' actions and inactions, Plaintiff was injured due to her ingestion of PPIs, which caused and will continue to cause Plaintiff various injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

49. As a result of Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

50. As a direct result of ingesting PPIs, Plaintiff has been permanently and severely injured, having suffered serious consequences from PPI use. Plaintiff requires and will in the future require ongoing medical care and treatment.

51. Plaintiff, as a direct and proximate result of PPI use, suffered severe mental and physical pain and suffering and has and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living related expenses due to her new lifestyle.

52. Plaintiff would not have used PPIs had Defendants properly disclosed the risks associated with long-term use.

**COUNT I**

**NEGLIGENCE**

53. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

54. At all times herein mentioned, Defendants, had a duty to exercise reasonable care in the research, development, testing for safety, research, formulation, manufacture, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing into the stream of commerce Nexium and/or other Nexium branded products and PPIs.

55. Defendants breached their duty of reasonable care to Plaintiff in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled and/or sold Nexium and/or other Nexium branded products and PPIs. Specifically, AstraZeneca failed to exercise reasonable care in ways which included, but were not limited to, one or more of the following particulars:

a. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff herein, of the dangerous and defective characteristics of Nexium and/or other Nexium branded products and PPIs;

b. In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff herein, of the propensity of Nexium and/or other Nexium branded products and PPIs to cause kidney injuries including acute interstitial nephritis, acute kidney injuries, and chronic kidney disease.

c. In representing that Nexium and/or other Nexium branded products and PPIs was safe and effective for its intended use when, in fact, the product was unsafe for its intended use;

d. In failing to perform appropriate, reliable and valid pre-market testing for safety of Nexium and/or other Nexium branded products and PPIs;

e. In failing to perform appropriate post-market testing of Nexium and/or other Nexium branded products and PPIs;

f. In failing to disclose to consumers and Plaintiff adverse events received from FDA by users of Nexium and/or other Nexium branded products and PPIs;

g. In failing to adequately represent the lack of research conducted on Nexium and/or other Nexium branded products and PPIs; and

h. In failing to perform appropriate post-market surveillance of Nexium and/or other Nexium branded products and PPIs.

56. Defendants knew or should have known that consumers, such as Plaintiff herein, would foreseeably suffer injury as a result of the Defendants failure to exercise reasonable and ordinary care.

57. As a direct and proximate result of Defendant's carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Nexium and/or other Nexium branded products and PPIs, Plaintiff suffered severe and permanent injuries. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT II

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

58. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

59. At all times material to this action, Defendants were responsible for designing, developing, researching, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, the Nexium and/or other Nexium

branded products and PPIs, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

60. At all times material to this action, Nexium and/or other Nexium branded products and PPIs was manufactured, distributed, and/or sold by Defendants in a defective and unreasonably dangerous condition.

61. In light of the potential and actual risk of harm associated with the product's use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded Nexium and/or other Nexium branded products and PPIs should not have been marketed in that condition.

62. At all times relevant herein, Defendants knew that Nexium and/or other Nexium branded products and PPIs would be prescribed by doctors to members of the general public who would rely upon the representations made by Defendants on the product label and in their marketing including public statements and promotional and sales materials.

63. At all times material to this action, Nexium and/or other Nexium branded products and PPIs were expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiff, without substantial change in the condition in which it was sold.

64. Defendants knew or should have known of the defective nature of Nexium and/or other Nexium branded products and PPIs, but continued to research, develop, design, test, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release this product into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their product, including serious medical side effects and injuries.

65. At all times, Plaintiff used Nexium and/or other Nexium branded products and PPIs for its intended or reasonably foreseeable purpose.

66. As a direct and proximate result of the defective and unreasonably dangerous condition of Nexium and/or other Nexium branded products and PPIs and of its failure to perform safely, Plaintiff suffered injuries as set forth above.

**COUNT III**

**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

67. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

68. At all times material to this action, Defendants were responsible for designing, developing, researching, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, the Nexium and/or other Nexium branded products and PPIs, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

69. At all times material to this action, Nexium and/or other Nexium branded products and PPIs was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a. When placed in the stream of commerce, Nexium and/or other Nexium branded products and PPIs contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the product, including Plaintiff, to risks which exceeded the benefits of the product;

b. The product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way;

c. The product was insufficiently tested;

d. The product caused harmful side effects that outweighed any potential utility;

e. The product was more dangerous than other PPI's on the market; and

f. The product was not accompanied by adequate labeling or instructions for use to fully apprise the public and consumers, including Plaintiff, of the potential risks and serious side effects associated with its use.

70. In light of the potential and actual risk of harm associated with the product's use, a reasonable person who had actual knowledge of this potential risk of harm would have concluded Nexium and/or other Nexium branded products and PPIs should not have been marketed in that condition.

71. There existed safer alternative designs, but Defendants chose to market a more dangerous design.

72. At all times relevant herein, Defendants knew that Nexium and/or other Nexium branded products and PPIs would be prescribed by doctors to members of the general public who would rely upon the representations made by Defendants on the product label and in their marketing including public statements and promotional and sales materials.

73. At all times material to this action, Nexium and/or other Nexium branded products and PPIs were expected to reach, and did reach, consumers in the State of California and throughout the United States, including Plaintiff, without substantial change in the condition in which it was sold.

74. Defendants knew or should have known of the defective nature of Nexium and/or other Nexium branded products and PPIs but continued to research, develop, design, test, manufacture, package, formulate, inspect, label, distribute, market, promote, sell and otherwise release these products into the stream of commerce so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by their products.

75. At all times, Plaintiff used Nexium and/or other Nexium branded products and PPIs for its intended or reasonably foreseeable purpose.

76. As a direct and proximate result of the defective and unreasonably dangerous condition of Nexium and/or other Nexium branded products and PPIs and of its failure to perform safely, Plaintiff suffered injuries as set forth above.

## COUNT IV

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

77. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

78. At all times material to this action, Defendants were responsible for designing, developing, researching, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, the Nexium and/or other Nexium branded products and PPIs, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

79. At all times material to this action, Nexium and/or other Nexium branded products and PPIs were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition in ways which included, but were not limited to, one or more of the following particulars:

a. it contained warnings insufficient to alert consumers, including Plaintiff herein, of the dangerous risks and injuries associated with Nexium and/or other Nexium branded products and PPIs, and the comparative severity, duration and the extent of the risks and injuries;

b. it contained warnings insufficient to alert consumers, including Plaintiff herein, of the propensity to cause a substantial increased risk of serious bodily harm.

c. The warnings that were given by the Defendants were not detailed, clear, and/or were ambiguous.

80. Plaintiff could not have discovered any defect in Nexium and/or other Nexium branded products and PPIs through the exercise of reasonable care.

81. Defendants, as manufacturers, sellers and/or distributors of Nexium and/or other Nexium branded products and PPIs, are held to the level of knowledge of an expert in the field.

82. Plaintiff and Plaintiff's doctor reasonably relied on the skill, superior knowledge, and judgment of Defendants.

83. Defendants had a continuing duty to warn the Plaintiff of the dangers associated with the use of Nexium and/or other Nexium branded products and PPIs.

84. Plaintiff consumed and used Nexium and/or other Nexium branded products and PPIs for its intended purpose.

85. Had Plaintiff and Plaintiff's doctor received adequate warnings regarding the risks of Nexium and/or other Nexium branded products and PPIs, Plaintiff would not have used it.

86. As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Nexium and/or other Nexium branded products and PPIs, Plaintiff suffered injuries as set forth above.

## COUNT V
## BREACH OF IMPLIED WARRANTY

87. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

88. At all times material to this action, Defendants were responsible for designing, developing, researching, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling, the Nexium and/or other Nexium branded products and PPIs, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

89. At the time of making these warranties, Defendants knew or should have known that, in fact, the representations and warranties were false, misleading, and untrue in that Nexium and/or other Nexium branded products and PPIs were not safe, effective and fit for use by consumers and users, including Plaintiff, for its intended use, that it was

not of merchantable quality, that it did produce dangerous side effects, serious health conditions and that it was not adequately tested or fit for its intended purpose.

90. Members of the public, including Plaintiff, reasonably relied upon the skill and judgment of Defendants and upon said implied warranties in using Nexium and/or other Nexium branded products and PPIs.

91. Plaintiff used Nexium and/or other Nexium branded products and PPIs for its intended purpose.

92. Defendants breached said implied warranties, in that, Nexium and/or other Nexium branded products and PPIs was not safe, effective and fit for its intended purpose, was not of merchantable quality, and, in fact, caused serious and potentially lethal side effects to consumers when taken in its recommended dose, and other injuries as herein alleged.

93. Due to Defendants wrongful conduct as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with Nexium and/or other Nexium branded products and PPIs until after they used it.

94. As a direct and proximate result of the Defendants breach of implied warranties and the unreasonably dangerous and defective characteristics of Nexium and/or other Nexium branded products and PPIs, Plaintiff suffered injuries as set forth above.

## PUNITIVE DAMAGES ALLEGATIONS

95. Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

96. Beginning with Nexium and/or other Nexium branded products and PPIs, Defendants engaged in a course of conduct that included selling untested or inadequately tested products, misrepresenting the safety and efficacy of those products, continuing to market products despite known safety concerns raised by federal agencies and otherwise engaging in a course of conduct that is reprehensible. That conduct continued with the marketing of Nexium and/or other Nexium branded products and PPIs.

97. At all times material hereto, Defendants knew that the use of Nexium and/or other Nexium branded products and PPIs could result in the development of serious harm and death. Additionally, Defendants knew that the use of Nexium and/or other Nexium branded products and PPIs would cause users, including Plaintiff, to suffer serious injury.

98. At all times material hereto, Defendants engaged in conduct that constitutes malice, oppression or fraud, including without limitation the misrepresentations, warranties and omissions set forth above.

99. Defendants continued to market Nexium and/or other Nexium branded products and PPIs to consumers, including Plaintiff, without disclosing the fact that use of Nexium and/or other Nexium branded products and PPIs could result in the development of serious injuries. Defendants did so knowing that their failure to reveal the probable consequences of ingesting Nexium and/or other Nexium branded products and PPIs would seriously injure consumers, including Plaintiff, in order to make a profit and in so doing they acted with malice.

100. Defendants went further than failing to warn of Nexium and/or other Nexium branded products and PPIs defective and dangerous nature. They intentionally and falsely represented and warranted that PPIs were safe when they knew that, in fact, Nexium and/or other Nexium branded products and PPIs were unsafe and posed a serious risk of injury to consumers, including Plaintiff. They further concealed the true risks of Nexium and/or other Nexium branded products and PPIs as alleged herein. In so doing, they acted with fraud.

101. Defendants continued to sell Nexium and/or other Nexium branded products and PPIs despite knowing the serious risk of injury posed to consumers. Such conduct is despicable and oppressive.

102. Defendants acts of malice, oppression and fraud were on the part of corporate officers, directors or managing agents, or were on the part of employees and were ratified or authorized by Defendants.

103. Defendants intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable Plaintiff to weigh the true risks of Nexium and/or other Nexium branded products and PPIs against the benefits in making their decision to use Nexium and/or other Nexium branded products and PPIs.

104. As a direct and proximate result of the Defendants conscious and deliberate disregard for the rights and safety of consumers, Plaintiff suffered severe injury and loss. Plaintiff likewise suffered loss as alleged herein. Plaintiff seeks actual and punitive damages from Defendants as alleged herein.

105. The aforesaid conduct of the Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff herein, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. As to all Counts and all Defendants, damages to the Plaintiff according to proof including as applicable:

   i. Past and future medical and care expenses of Plaintiff according to proof;

   ii. Past and future loss of earnings (and profits) of Plaintiff according to proof;

   iii. Other economic loss;

b. As to all Counts and all Defendants, Non-economic damages according to proof including as applicable:

   i. Compensation for physical pain and discomfort;

   ii. Compensation for fright, nervousness, anxiety, worry, and apprehension;

c. As to all Counts and all Defendants, awarding pre-judgment and post-judgment interest to the Plaintiff according to proof;

d. As to all Counts and all Defendants, awarding reasonable costs to the Plaintiff as provided by law;

e. As to all Counts and all Defendants, awarding Plaintiff punitive and treble damages; and

f. As to all Counts and all Defendants, granting all such other relief as the Court deems necessary, just and proper.

DATE: November 3, 2016

ANDRUS ANDERSON LLP

By: *s/ Jennie Lee Anderson*
Jennie Lee Anderson

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff Bekins demands a jury trial in this action for all claims so triable.

DATE: November 3, 2016

ANDRUS ANDERSON LLP

By: *s/ Jennie Lee Anderson*
Jennie Lee Anderson

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

*Attorneys for Plaintiff*